# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHARIF BASS,<br><br>   Petitioner,<br><br>v.<br><br>THE ATTORNEY GENERAL OF THE<br>STATE OF NEW JERSEY, et al.,<br><br>   Respondents. | Civil Action No. 16-5332-BRM<br><br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is the petition for a writ of habeas corpus of Sharif Bass ("Petitioner") brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Following an order to answer, Respondents filed a response to the petition. (ECF No. 6.) Petitioner did not file a reply. For the reasons set forth below, Petitioner's habeas petition is **DENIED**, and Petitioner is **DENIED** a certificate of appealability.

## I. BACKGROUND

In its opinion affirming Petitioner's conviction and sentence, the Superior Court of New Jersey, Appellate Division provided the following summary of the facts underlying this matter:

> Pursuant to a plea arrangement, [Petitioner, Sharif Bass,] pled guilty to first-degree aggravated manslaughter[1 in violation of N.J. Stat. Ann. § 2C:11-4(a)(1)] and to second-degree conspiracy to commit armed robbery [in violation of N.J. Stat. Ann. §§ 2C:5-2 and 15-1]. The State recommended an aggregate sentence of twenty-eight years incarceration, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), [N.J. Stat. Ann. §] 2C:43-7.2. The sentencing court imposed [the sentence which] the State recommended.

---

[1] Petitioner had initially been indicted for purposeful or knowing murder, but the charge was amended to aggravated manslaughter as part of Petitioner's plea agreement. (*See* ECF No. 6-5 at 2 n.1.)

1

. . . .

In the indictment that is the subject of this appeal, Bass-along with three other individuals-was accused of planning and committing several crimes in Asbury Park, the most serious of which resulted in the homicide of Phonarith Chhieng, who was a victim of the co-defendants' premeditated robbery. Chhieng had been lured from a local bar to the vicinity of 316 Asbury Avenue where he was violently set upon, robbed, and ultimately killed by Bass's cohorts.

[The Appellate Division thereafter summarized the basis for and denial of a suppression motion not relevant to this petition.]

More than a year after [Petitioner's] suppression motion was denied, Bass entered a plea of guilty to aggravated manslaughter. At the time Bass entered his plea of guilty, his co[-]defendants all had either entered pleas of guilty or been found guilty of the charges in the indictment. The judge who oversaw Bass's plea allocution and accepted the guilty plea was familiar with the circumstances of the crimes and what had happened to the three codefendants.[]

The plea allocution reveals the following exchanges between the court and Bass:[2]

> [Court]: All right. Now do you understand that . . . you agree[d] to commit a robbery, all right, [that's] what you did in this case?
>
> [Petitioner]: Yes.
>
> [Court]: All right. And do you understand further that you were aware that [an individual] had got[ten] hurt [during a robbery] three days before?
>
> [Petitioner]: Yes.

---

[2] Although the Appellate Division did not specifically summarize the exchange, during his factual basis, Petitioner also directly admitted that he and his co-defendants entered into an agreement to rob the victim, that his co-defendants beat the victim after which Petitioner removed money from the victim's pocket, and that it was foreseeable when Petitioner left that his co-defendants might kill the victim. (*See* ECF No. 6-17 at 5-7.) Petitioner also admitted that he understood that, had he gone to trial, he would have been subject to a potential felony murder conviction based on the death of the victim as a result of the robbery conspiracy in which Petitioner engaged with his co-defendants. (*Id.*)

2

[Court]: All right. So to be liable for murder in this case for a lesser included offense of aggravated manslaughter, all right, there's a—what's called a conspiracy theory of liability. Do you understand that?

. . . .

[Petitioner]: Yeah, I know.

[Court]: And basically the State's position would have been, in this case, that knowing of the prior robbery and what happened [to the previously injured individual], that when you entered that conspiracy to rob in this particular case, and were in fact an accomplice to the robbery, because you had a purpose to rob that particular individual.

[Petitioner]: That's correct.

. . . .

[Court]: All right. That it could be reasonably foreseeable, and it would be a jury question, it would have been reasonably foreseeable that someone could have been seriously injured or in fact killed.

[Petitioner]: That's correct.

[Court]: Do you understand?

[Petitioner]: Yes.

[Court]: And that could have been the - the murder conviction in this particular case. And, again, you've agreed that, certainly, as a result of you agreeing to be involved in the robbery and being an accomplice to the robbery, someone did die, there's no question about that.

[Petitioner]: That's correct.

[Court]: All right. Because your co[-]defendant killed him. So aggravated manslaughter is a manslaughter involved, you know, reckless indifference to human life. So even though

> individually you did not kill this particular person, you're pleading to that on the theory either that as a conspiracy, it's a lesser included offense; or, you know, you would have been guilty of felony murder and it's a lesser included offense for that, the State's giving you the benefit of the doubt. Is that true?
>
> [Petitioner]: That's true.
>
> [Court]: All right. Do you understand that?
>
> [Petitioner]: I understand.
>
> . . . .
>
> [Court]: All right. And the murder theory that we also talked about. You had an agreement to rob somebody. It is reasonably foreseeable that someone would get killed or seriously hurt as a result of that type of activity. Do you understand that?
>
> [Petitioner]: Yes.
>
> Based upon the totality of the circumstances, the court accepted the plea as providing a sufficient factual basis to support the crime of aggravated manslaughter.

(ECF No. 6-5 at 3-8.)

Following his conviction and sentence, Petitioner appealed. During his direct appeal, Petitioner raised one claim which is relevant to his current habeas petition – that he had not given a sufficient factual basis to support his guilty plea to aggravated manslaughter insomuch as he had never admitted to killing the victim or engaging in actions which manifested extreme indifference to human life. (*Id.* at 11.) The Appellate Division rejected that argument, finding that Petitioner had given an adequate factual recitation in support of his guilty plea based on the colloquy summarized above. (*Id.* at 11-14.) In so finding, the Appellate Division noted that Petitioner had pled guilty to aggravated manslaughter based on New Jersey's principles regarding vicarious liability for co-conspirators and accomplices, which holds co-conspirators and accomplices

4

responsible for the foreseeable actions of the others whom they aided or with whom they conspired. (*Id.* at 13.) The Appellate Division therefore affirmed Petitioner's conviction and sentence. (*Id.*) Thereafter, Petitioner filed a petition for certification, which the New Jersey Supreme Court denied in November 2011. (ECF No. 6-7.)

Petitioner filed a petition for post-conviction relief in the state courts, which was denied without a hearing by the trial court on August 9, 2013. (*See* ECF No. 6-8.) Petitioner appealed, and the Appellate Division affirmed the denial of post-conviction relief by way of an opinion issued on June 23, 2015. (ECF No. 6-11.) Petitioner filed a petition for certification, but the New Jersey Supreme Court denied that petition in October 2015. (ECF No. 6-14.) Petitioner thereafter filed his current petition for a writ of habeas corpus. (ECF No. 1.)

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

5

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. DECISION

### A. Petitioner has failed to show that he provided a constitutionally insufficient factual basis for his guilty plea.

In his first claim, Petitioner asserts his guilty plea was improper because he failed to provide an adequate factual basis to support his conviction for aggravated manslaughter. The "Due Process Clause of the Fourteenth Amendment to the United States Constitution does not require an on-the-record development of the factual basis supporting a guilty plea before the entry of the plea, and the failure of a state court to elicit a factual basis before accepting a guilty plea does not in itself provide a ground for habeas corpus relief under 28 U.S.C. § 2254." *Meyers v. Gillis*, 93 F.3d 1147, 1151 (3d Cir. 1996); *see also Posada v. Warren*, No. 13-289, 2016 WL 6434092, at *9

(D.N.J. Oct. 28, 2016). A guilty plea instead will be valid so long as he plea was entered "voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v United States*, 397 U.S. 742, 748 (1970)). This does not require a factual basis, however, only that the defendant be "aware of the nature of the charges against him, including the elements of the . . . charge to which he pleaded guilty." *Id.* at 182-83.

In his first claim, Petitioner asserts the factual basis which was provided during his plea allocution was insufficient. Even if such an assertion could support habeas relief, the state courts on direct appeal have already evaluated this factual claim and found it wanting. Specifically, the Appellate Division on direct appeal found a "fair reading of [Petitioner's] factual basis contains admission of every essential element necessary for the imposition of vicarious liability for aggravated manslaughter [committed by his co-conspirator]." (ECF No. 6-5 at 13). That factual determination is entitled to deference and must be "presumed to be correct." *See* 28 U.S.C. § 2254(e)(1). It can only be overcome if Petitioner could show "by clear and convincing evidence" the Appellate Division's factual conclusions as to the sufficiency of the basis for his plea was incorrect. *Id.*

Petitioner has failed to make any such showing, and the transcript of Petitioner's plea agreement instead indicates he specifically agreed to the trial court's summary of the facts indicating his co-conspirator's killing of the victim was a foreseeable consequence of their decision to commit robbery, and that, as a result, Petitioner was responsible for the actions of his co-conspirator which amounted to aggravated manslaughter. Petitioner has therefore failed to show that the factual conclusions of the Appellate Division were incorrect by clear and convincing evidence, and his assertion that the factual basis for his plea was inadequate must fail. Because the

7

Appellate Division's conclusion is entitled to deference, and because Petitioner has otherwise failed to show that the Appellate Division's decision was contrary to or an unreasonable application of federal law, his first claim is insufficient to warrant habeas relief.

Although Petitioner does not assert it as part of his claim that his factual predicate was inadequate, Petitioner does elsewhere in his petition assert that, at the time he pled guilty, he did not "even understand the terms and conditions of the plea" as part of his ineffective assistance of counsel claim, which is discussed below. (ECF No. 1 at 1.) That conclusory statement, which Petitioner neither supports with factual allegations and evidence nor elaborates upon, is contradicted by the following portion of Petitioner's plea colloquy:

> [Court]: All right. [Petitioner], . . . [w]e tried to put a plea through perhaps a week ago. Is that so?
>
> [Petitioner]: Yeah, probably.
>
> [Court]: All right. And at that particular point, you said that you were confused. And when you said that, I stopped the plea, all right; because you know, quite frankly, I don't want to put through a plea that's not going to hold up. Do you understand that?
>
> [Petitioner]: Yes.
>
> . . . .
>
> [Court]: All right. Now have you had a chance to discuss this with [counsel]?
>
> [Petitioner]: We talked about it.
>
> [Court]: All right. Are you satisfied with his advice and assistance to you?
>
> [Petitioner]: Yes.
>
> [Court]: All right. And is there anything about this plea that's confusing you at the present time?

[Petitioner]: Just one thing[, b]ut I don't think it's going to matter any, so.

[Court]: Well, it may matter later on. What's confusing you?

[Petitioner]: Well it's not necessarily confusing, just . . . the non-custodial time, that's all. That's the only problem, besides that everything else is fine.

[Court]: You mean the credit that you would get for . . . being in jail?

[Petitioner]: Yes.

[Court]: All right. Whatever credit you're legally entitled to, . . . we'll give you the credit that you're entitled to and if . . . you're not satisfied with that credit, you can appeal the amount of credit that I give you. Do you understand that?

[Petitioner]: Yes.

[The Court and Petitioner then engaged in a lengthy factual basis colloquy including the portion excerpted in the Appellate Division's opinion recounted above.]

[Court]: All right. So you understand fully what you're doing here today?

[Petitioner]: Yes.

[Court]: All right. No confusion today?

[Petitioner]: No. I'm straight.

[The Court then summarized for Petitioner his sentencing exposure, and the rights he was giving up by pleading guilty rather than proceeding to trial, all of which Petitioner stated he understood].

[Court]: All right. And, again, you're satisfied with [counsel]?

[Petitioner]: I'm cool.

[Court]: You're cool with him?

[Petitioner]: Yeah.

9

[Court]: Now do you understand that you told me that you're guilty of these offenses?

[Petitioner]: Yes.

[Court]: All right. You told me nobody forced you to plead guilty?

[Petitioner]: Correct.

[Court]: And you've told me that you're satisfied with [counsel]?

[Petitioner]: Correct.

[Court]: So, you know, if a week from now you're sitting in the jail and, you know, say, gee, you know –

[Petitioner]: Look, Your Honor –

[Court]: - maybe I made a mistake and I wanted to go to trial.

[Petitioner]: Pardon me. Pardon me.

[Court]: I'm not going to let you take your plea back.

[Petitioner]: Pardon me. I ain't stupid. I'm going to take this [plea and] this is where it ends. I ain't . . . stupid.

[Court]: All right. But you know, I'm not saying you're stupid or smart or anything.

[Petitioner]: I would be stupid if I decided to go to trial . . . in this court.

[Court]: All right. And I'm telling you that if you . . . decided to withdraw what we've done here today, I probably won't let you do it. Do you understand that?

[Petitioner]: I understand.

[Court]: So you're bound by the results of what happens here today.

[Petitioner]: All right.

(ECF No. 6-17 at 3-15.)

10

Based on this plea colloquy excerpt, it fully appears Petitioner understood what he was doing in so much as he was informed of his sentencing exposure, the rights he was waiving, and the basis for his guilty plea for murder and robbery, for which Petitioner provided an adequate factual basis. Petitioner repeatedly asserted that he understood what he was doing, and the results of his plea, and was given ample opportunity to express any confusion he may have had, which he did as to jail credit time. Based on these statements made by Petitioner, and the fact that Petitioner has failed to provide anything more than an unsupported, conclusory allegation regarding his alleged confusion, Petitioner has failed to show he was unaware of the facts and circumstances of his plea, and has therefore failed to show he did not knowingly, intelligently, and voluntarily enter his guilty plea. Therefore, Petitioner is not entitled to habeas relief on his bald assertion he did not understand his plea. *See Stumpf*, 545 U.S. at 182-83.

**B.     Petitioner has failed to establish ineffective assistance of counsel**

All of Petitioner's remaining claims allege he suffered ineffective assistance of counsel of one form or another during the course of his criminal matter. The standard which applies to such claims is well established:

> Claims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective

> assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

In this matter, Petitioner raises two classes of claims of ineffective assistance of counsel. First, Petitioner asserts counsel was ineffective in failing to consult with him in person rather than though video conferences, which prevented counsel from adequately advising Petitioner as to the terms of his plea agreement. Second, Petitioner contends counsel failed to properly investigate potential defenses in the form of a diminished capacity defense or an alleged exculpatory witness. The Court will address each in turn.

In his first group of claims, Petitioner contends counsel did not adequately consult with him in person, and that, as a result of this failing, counsel would have learned that Petitioner "had absolutely nothing to do with the death in this matter" and that it was instead his co-defendants, with whom Petitioner agreed to commit the robbery resulting in the death in question, that beat and ultimately killed the victim. Petitioner does not assert in his habeas petition he would not have pled guilty had counsel more fully advised him regarding the terms of the plea agreement, and, other than asserting the investigation claims discussed more fully below, Petitioner does not provide any information as to what prejudice he suffered as a result of counsel's failure to meet with him in person rather than via video conference.

In order to establish that he suffered prejudice as a result of counsel's failure to more fully discuss Petitioner's case with him in the context of a guilty plea, Petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [which i]n the context of pleas [requires] a [petitioner] show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384-85 (2012). Because Petitioner pled guilty in this matter, to establish prejudice he must show not only that he would not have pled guilty and would instead have proceeded to trial had he been adequately advised, but also that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Petitioner fails to meet this high bar in his habeas petition. Neither Petitioner's habeas petition nor his certification to the PCR court (*see* ECF No. 6-9 at 76-77) contain any direct statement that he would have not have pled guilty had he been more fully advised, nor does either document specify what benefit would have accrued to Petitioner had counsel more diligently met

13

with him, chosen to meet with him in person rather than over video conference, or more thoroughly advised him as to his guilty plea. Likewise, although in both documents Petitioner states he had "nothing to do" with the actual killing of the victim and that it was instead his co-conspirators who killed he victim, that fact was utterly immaterial to the vicarious liability basis for Petitioner's guilty plea. As the plea judge explained to Petitioner during his plea hearing, and as Petitioner agreed at that same hearing, his guilty plea to aggravated manslaughter did not arise out of the contention that Petitioner killed the victim, but instead arose out of the contention that Petitioner conspired to commit robbery, a point Petitioner does not dispute, and that it was foreseeable that his co-conspirators would thereafter kill the robbery victim, and that as a result, Petitioner's conduct vicariously subjected him to criminal liability for the aggravated manslaughter committed by his robbery co-conspirator. Ultimately Petitioner's certification and his habeas petition contain no factual information which suggests that the result of Petitioner's plea proceedings would have been different had he been more fully advised, nor do they present any information which suggests that a reasonable person under the circumstances would have proceeded to trial with proper advice. Petitioner's statement that it would have been foolish to go to trial under the circumstances after the convictions of his co-conspirators likewise suggests directly he opposite – that it would not have been rational for Petitioner to not plead guilty. As such, Petitioner has utterly failed to establish *Strickland* prejudice, and he is not entitled to habeas relief. *Padilla*, 559 U.S. at 372; *Hill*, 474 U.S. at 59; *Cross*, 308 F.3d at 315.

Petitioner's investigation related claims fair no better. In order to establish *Strickland* prejudice in relation to a claim that counsel failed to adequately investigate prior to trial, a petitioner "'must make a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from

14

such an investigation and whether such information, assuming admissibility in court, would have produced a different result.'" *Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016) (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) (stating that a petitioner making inadequate investigation claims "has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) (same); *accord United States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008). Likewise, where a petitioner asserts that counsel failed to investigate a potential exculpatory witness, the petitioner cannot establish *Strickland* prejudice without providing a sworn statement from the witness identifying what testimony they would have provided at trial. *Judge*, 119 F. Supp. 3d at 285; *Tolentino v. United States*, No. 13-4168, 2014 WL 3844807, at *3 (D.N.J. July 31, 2014); *see also Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001).

In his habeas petition, Petitioner fails to identify the potentially exculpatory witness counsel did not pursue and fails to submit a sworn statement concerning the testimony this alleged witness would have offered. Likewise, although Petitioner asserts that, had counsel investigated, he would have identified a potential diminished capacity defense which would "have put petitioner in a better position for plea negotiations"; based on Petitioner's apparent history of had trauma, substance abuse, antisocial behavior, and suicidal ideation; Petitioner has failed to provide any factual support for these assertions. Indeed, Petitioner, both in the PCR court and in his habeas petition, provides only his own assertions that such a defense would have presented itself. Petitioner has presented no expert reports, psychological records, or other information sufficient to suggest that a legitimate diminished capacity defense would have arisen had further investigation been conducted by his counsel. As such, Petitioner has failed to show that he suffered

15

*Strickland* prejudice from counsel's failure to investigate, and the state courts' rejection of his ineffective assistance claims on that basis was neither contrary to, nor an unreasonable application of, established federal law. Petitioner has thus failed to establish *Strickland* prejudice as to any of his ineffective assistance of counsel claims, and Petitioner has thus failed to establish any basis for habeas relief and his petition must therefore be denied.

### IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right insomuch as Petitioner's claims are without merit, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further. Petitioner is therefore denied a certificate of appealability.

### V.   CONCLUSION

For the reasons stated above, Petitioner's habeas petition (ECF No. 1) is **DENIED** and Petitioner is **DENIED** a certificate of appealability. An appropriate order will follow.

**Date:**  May 7, 2018                                                      */s/ Brian R. Martinotti*
                                                                                                  **HON. BRIAN R. MARTINOTTI**
                                                                                                  **UNITED STATES DISTRICT JUDGE**